Davydov v Board of Mgrs. of Forestal Condominium (2020 NY Slip Op 03643)





Davydov v Board of Mgrs. of Forestal Condominium


2020 NY Slip Op 03643


Decided on July 1, 2020


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on July 1, 2020
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

REINALDO E. RIVERA, J.P.
SYLVIA O. HINDS-RADIX
COLLEEN D. DUFFY
ANGELA G. IANNACCI, JJ.


2019-01005
 (Index No. 5263/15)

[*1]Albert Davydov, respondent, 
v
Board of Managers of Forestal Condominium, et al., appellants (and a third-party action).


Gartner + Bloom, P.C., New York, NY (Arthur P. Xanthos and Narriman Subrati of counsel), for appellants.



DECISION & ORDER
In an action, inter alia, to recover damages for personal injuries, the defendants appeal from an order of the Supreme Court, Queens County (Denis J. Butler, J.), entered December 3, 2018. The order denied the defendants' motion for summary judgment dismissing the cause of action to recover damages for personal injuries, or, in the alternative, for a Frye hearing on the admissibility of expert testimony on the issue of causation (see Frye v United States, 293 F 1013 [D.C. Cir]).
ORDERED that the order is affirmed, without costs or disbursements.
The plaintiff commenced this action alleging defects in the construction of his condominium unit allegedly resulting in the presence of toxin-producing molds, i.e., aspergillus penicillium. He further alleged in his amended complaint that his urine sample revealed the presence of T-2 Toxin Trichothecene. In his verified bill of particulars with respect to the amended complaint, he reiterated that his urine analysis revealed the presence of T-2 Toxin Trichothecene, and that his exposure to toxic mold resulted in "respiratory problems, muscle cramps, difficulty breathing, coughs and coughing, nasal itch and rash, singultus, conjunctivitis, epistaxis, rhinorrhea, dyspnea, wheezing, dizziness, fatigue, tachycardia, blurred vision, eye pain, dark spots, cognitive problems, inability to focus and concentrate, depression."
After issue was joined, the defendants moved for summary judgment dismissing the cause of action to recover damages for personal injuries, or, in the alternative, for a Frye hearing on the admissibility of expert testimony on the issue of causation (see Frye v United States, 293 F 1013), based upon their attorney's affirmation and the affidavit of a clinical neuropsychologist, who stated that there was no scientific support for the claim that environmental exposure to molds could cause the plaintiff's neurological symptoms. Annexed to the expert's affidavit was his medical report, stating that "to a reasonable degree of neuropsychological certainty" the plaintiff was not suffering from "any form of cognitive and/or psychological impairment that could be causally related to the alleged exposure to neurotoxins." The defendant's expert further stated that there was "no indication that cognitive impairment resulting from mold exposure or any other cause is having any primary or tangible effect" on the plaintiff's functioning.
In opposition, the plaintiff's attorney submitted an affirmation in which unsworn [*2]medical reports were cited. The defendants in reply noted that the reports submitted by the plaintiff were unsworn. The defendants submitted a reply affidavit from their expert, in which he stated that while the scientific literature found a recognized association between mold and some ailments, there was no generally accepted causation between the two.
The Supreme Court, in the order appealed from, denied the defendants' motion on the ground that the defendants failed to establish their prima facie entitlement to judgment as a matter of law, and the defendants did not establish that the plaintiff was relying upon experimental, novel, or unaccepted scientific theories which would warrant a Frye hearing. The defendants appeal.
In Cornell v 360 W. 51st St. Realty, LLC (22 NY3d 762), relied upon by the defendants, the Court of Appeals ruled that a defendant landlord in a case commenced by a plaintiff tenant alleging personal injuries resulting from mold exposure, established its prima facie entitlement to judgment as a matter of law based upon an affidavit of a "clinical immunologist" with experience in internal medicine, allergy, and immunology (id. at 768). The expert asserted that the mold in the plaintiff's apartment was at expected and not elevated levels, that there was no evidence of elevated mold levels in the apartment, that the plaintiff's physical ailments predated his exposure to the apartment and persisted after he left the apartment, and that the plaintiff's laboratory data did not substantiate mold-related illness. In opposition, the plaintiff submitted the affidavit of an expert who stated that it was generally accepted in the scientific literature that exposure to damp buildings and excessive mold was a cause of respiratory problems. The expert concluded that based upon a differential diagnosis of the plaintiff, he suffered from asthma and irritation of skin and mucous membranes caused by unsanitary and unhygienic conditions in the apartment. The Court found that those submissions by the plaintiff failed to raise a triable issue of fact, since the expert failed to identify a specific disease-causing agent, and did not respond to the conclusion that the mold level in the apartment was at expected levels. The Court found significant that there was no effort to specify the contaminant or quantify the level of exposure. The Court further noted that "this case does not (and indeed cannot) stand for the proposition that a cause-and-effect relationship does not exist between exposure to indoor dampness and mold and the kinds of injuries that [plaintiff] alleged" (id. at 786).
However, that analysis is not applicable here, since the defendants failed to establish their prima facie entitlement to judgment as a matter of law (see Pullman v Silverman, 28 NY3d 1060; Oliver v New York City Health & Hosp., Corp., 178 AD3d 1057). Their expert, a clinical neuropsychologist, claimed that there was no scientific support for the claim that environmental exposure to molds could cause the plaintiff's neurological symptoms. However, the plaintiff alleged more than neurological symptoms. Further, there were specific allegations in the plaintiff's bill of particulars, most notably his allegation of the presence of T-2 Toxin Trichothecene, which was not addressed by the expert. Therefore, we agree with the Supreme Court's determination denying that branch of the defendants' motion which was for summary judgment dismissing the cause of action to recover damages for personal injuries, regardless of the sufficiency of the opposition papers (see Winegrad v New York Univ. Med. Ctr., 64 NY2d 851, 853).
The question of whether specific contaminants cause physical injury does not present a novel scientific theory (see Nonnon v City of New York, 32 AD3d 91, affd 9 NY3d 825). Therefore, the defendants are not entitled to a Frye hearing (see Frye v United States, 293 F 1013).
RIVERA, J.P., HINDS-RADIX, DUFFY and IANNACCI, JJ., concur.
ENTER:
Aprilanne Agostino
Clerk of the Court